PEOPLE v DYER

Docket No. 89148. Submitted August 27, 1986, at Detroit. Decided November 24, 1986.

Terry Dyer and Betty Farris were bound over for trial in Detroit Recorder's Court on charges of receiving and concealing stolen property valued over $100 and conspiracy to receive and conceal stolen property valued over $100. The property involved is an unspecified number of Series E United States savings bonds with varied maturity dates. The bonds had cost more than $100, had a value of approximately $6,000 when stolen, and would be worth $8,500 at maturity. The court, Michael J. Talbot, J., granted defendants' motion to quash and dismissed the case without prejudice on the ground that the prosecution had failed to establish that the savings bonds had a value of more than $100 because the bonds had no legally negotiable value to anyone other than the purchaser. The people appealed.

The Court of Appeals *held:*

The magistrate did not abuse her discretion in binding defendants over for trial. There was competent evidence establishing that the fair market value of the bonds exceeded $100. The trial court abused its discretion in quashing the information.

Reversed and remanded for further proceedings.

1. LARCENY — VALUE OF STOLEN GOODS.

The value of a stolen item is the price that the item will bring on an open market between a willing seller and a willing buyer at the time and place of the offense.

2. EVIDENCE — PERSONAL PROPERTY — VALUE.

An owner of personal property is qualified to testify regarding such property provided the testimony does not relate to sentimental or personal value; testimony as to objective value is permitted.

REFERENCES

Am Jur 2d, Evidence § 387.

Am Jur 2d, Larceny §§ 45, 46, 64.

See the annotations in the Index to Annotations under Larceny or Theft.

3. Larceny — Value of Stolen Goods.
   Property of intrinsically small value which represents a contract or property right of much greater value is deemed to have the greater value in larceny cases unless the owner can replace the property at a smaller cost and thereby save his right.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, and *Virginia Hazen,* Assistant Prosecuting Attorney, for the people.

*James C. Thomas, P.C.* (by *James C. Thomas*), for defendants.

Before: MacKenzie, P.J., and Bronson and R. A. Benson,* JJ.

Per Curiam. Terry Dyer, Russell LaRocca, and Betty Farris were each charged with one count of receiving and concealing stolen property valued over $100, MCL 750.535; MSA 28.803, and one count of conspiracy to receive and conceal stolen property valued over $100, MCL 750.157(a); MSA 28.354(1). Following preliminary examination, the case was dismissed as to LaRocca; defendants Dyer and Farris were bound over. By order entered November 27, 1985, however, a Recorder's Court judge granted defendants' motion to quash and dismissed the case without prejudice because the prosecution had failed to establish that the allegedly stolen goods were valued over $100. The people appeal as of right.

The subject allegedly stolen goods in this case are an unspecified number of Series E United Stated savings bonds with varied maturity dates. The primary owner of the bonds, John Bilinski,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

testified that the total face value of the bonds on maturity would be $8,500 and that the approximate value of the bonds on the date of the theft was over $6,000. The total purchase price of the bonds had been over $100. Savings bonds can be cashed only by presentation and endorsement by the owner to a registered agent such as a bank.

Defendant Farris allegedly purchased the bonds for approximately $500 from the person who had stolen them. The bonds were then given to La-Rocca and defendant Dyer. Defendant Dyer thereafter came into contact with Patrick Wease, an undercover FBI agent, to arrange a further sale of the bonds. Wease eventually paid defendant Dyer $1,700 for the bonds.

It is the duty of the magistrate to bind a defendant over for trial if it appears at the conclusion of the preliminary examination that a crime has been committed and there is probable cause to believe that the defendant committed it. MCL 766.13; MSA 28.931; *People v Doss,* 406 Mich 90; 276 NW2d 9 (1979); *People v Grihm,* 148 Mich App 285; 383 NW2d 631 (1986). It is not the object of the preliminary examination to determine a defendant's guilt or innocence. *Doss,* p 103. Rather, if evidence conflicts or raises a reasonable doubt of a defendant's guilt, such question should be left for the jury upon trial. *Id.* The trial court reviewing the magistrate's decision to bind over may not disturb the decision unless the defendant can demonstrate a clear abuse of discretion. *People v Irby,* 129 Mich App 306; 342 NW2d 303 (1983); *People v Shipp,* 141 Mich App 610; 367 NW2d 430 (1985), lv den 422 Mich 1206 (1985); *Grihm, supra.* This Court also reviews the decision of the examining magistrate to bind over for an abuse of discretion. *People v Schaffer,* 129 Mich App 287; 341 NW2d 507 (1983), lv den 419 Mich 860 (1984). Thus, in

the instant case, the issue is whether the magistrate abused her discretion in binding defendants over on charges of receiving and concealing stolen property and conspiracy to receive and conceal stolen property because the people failed to establish that the allegedly stolen bonds exceeded $100 in value. We find no abuse of discretion and accordingly reverse the order of the Recorder's Court.

In order to establish the value of the bonds in this case, it was incumbent upon the prosecution to produce evidence independent of their face value, as there is no legal presumption that their value corresponds to the sum they nominally represent. See *People v Donald,* 48 Mich 491, 493; 12 NW 669 (1882). The *Donald* rule differs from the rules in other jurisdictions, wherein the face value of an instrument is often prima facie evidence of the value of the instrument. See 50 Am Jur 2d, Larceny, § 46, p 212.

Accordingly, the general valuation rule set forth in *People v Johnson,* 133 Mich App 150, 153; 348 NW2d 716 (1984), applies:

> While the larceny statute itself does not provide a guide for determining the value of property which is the subject of a theft, case law supports the use of fair market value as the relevant standard when such a value exists. *People v Hannenberg,* 274 Mich 698; 265 NW 506 (1936); *People v Gilbert,* 163 Mich 511; 128 NW 756 (1910). Generally, proof of value is determined by reference to the time and place of the offense. *People v Cole,* 54 Mich 238; 19 NW 968 (1884); *Gilbert, supra.* Value has been interpreted to mean the price that the item will bring on an open market between a willing buyer and seller. *People v Otler,* 51 Mich App 256; 214 NW2d 727 (1974); *People v Tillman,* 59 Mich App 768; 229 NW2d 922 (1975).

At defendants' preliminary examination, defendants unsuccessfully argued that because the bonds had no legally negotiable value to anyone but Bilinski there was insufficient evidence that the bonds exceeded $100 in value, an essential element of the crimes charged. See *People v Hooks,* 139 Mich App 92, 96; 360 NW2d 191 (1984). Following their bindover to Recorder's Court, defendants reiterated this argument by way of motion to quash the information. The court apparently agreed, granting the motion and dismissing the charges.

The people make a persuasive argument as to the fair market value of the United States savings bonds:

When a bond is purchased, the willing buyer and willing seller transaction takes place at the *original* purchase date of the bond. At this time, neither party is forced to participate. The bond is offered for sale and the purchaser makes a decision as to whether or not to buy. The cash-in or redemption value at any given point after the original purchase is simply part of the conditions of purchase and is assessed by the buyer at the original purchase date as part of the buyer's decision as to whether the price is a good price. The cash-in value is merely a measure of the original fair market value at a future point in time. Therefore, in the case at bar, the cash-in value on August 31, 1983 had been determined in a fair market transaction at the date of the original purchase of the bonds, and this value on August 31st, 1983 is a proper fair market value for the purpose of MCLA 750.535 [MSA 28.803].

Defendants attack this reasoning by asserting that the complainant's testimony as to the original price paid for the bonds and their cash-in value is incompetent because the testimony concerns only

the "personal value" of the bonds to complainant. Defendants assert that because the bonds were nonnegotiable, nontransferable, and payable only to the registered owners, they represented no more than a personal contract between the United States government and the complainant, with a value personal to the owner only.

Defendants' argument misconstrues the relevant rule. The general rule is that an owner of personal property is qualified to testify regarding the value of such property only if the testimony does not relate to sentimental or personal value. *People v Clemons,* 91 Mich App 68; 282 NW2d 838 (1979), remanded 407 Mich 939 (1979), citing *People v Tillman,* 59 Mich App 768, 771-772; 229 NW2d 922 (1975). The phrase "personal value" means subjective value to the owner, a value which cannot be objectively substantiated. See *People v Gilbert,* 163 Mich 511; 128 NW 756 (1910); 50 Am Jur 2d, Larceny, § 45, pp 209-210. The rule thus is not meant to exclude testimony as to what the item is objectively worth simply because the bonds legally have worth only to the true owners.

To accept defendants' argument would lead to the result that the bonds in the instant case (or other intangibles such as a nonassignable contract regarding a property right, legally of value only to the true owner) cannot be the subject of a larceny over $100 because the property is nonnegotiable and cannot be transferred. This result is obviously untenable, as our Legislature has mandated that bonds and contracts can be the subject of a larceny. MCL 750.356; MSA 28.588.

LaFave and Scott state the general rule with respect to the value of intangibles as:

> In the case of property of intrinsically small value which represents a contract or property

right of much greater value (as where an automobile license plate made of $1 worth of metal costs the motorist $20 to obtain; or as a check, written on paper worth a cent, represents a right to receive $100), it is the latter value which is important in larceny cases, unless perhaps the owner can at a smaller cost replace the property and thereby save his right. [LaFave & Scott, Criminal Law, § 87, p 635; see also 50 Am Jur 2d, Larceny, § 45, p 211.]

Applying this rule, we conclude that there was competent evidence establishing that the fair market value of the bonds exceeded $100. Accordingly, the trial judge abused his discretion in quashing the information.

Reversed and remanded for further proceedings.

BRONSON, J., did not participate.