## PEOPLE v BROWN

Docket No. 110790. Submitted June 20, 1989, at Lansing. Decided August 7, 1989.

Anthony Gene Brown was convicted of larceny over $100 at the conclusion of a jury trial in the Tuscola Circuit Court, Patrick R. Joslyn, J. The stolen item was the carcass of a four-point albino deer killed by a hunter who had hung the carcass for aging on a tree in his yard. Defendant appealed, claiming that the prosecution failed to prove that the stolen item exceeded $100 in value.

The Court of Appeals *held:*

1. Although MCL 314.27; MSA 13.1375 provides that a deer killed by a hunter may not be sold with the exception of its head or hide, the value of the stolen deer carcass was' sufficiently established to be in excess of $100 through the expert testimony of a licensed deer rancher who testified that at the time of the instant offense he was selling four-point deer for $300. It was the prosecution's contention, and the jury could have reasonably concluded, that the deer carcass in this case would have fetched approximately the same price had it been sold illegally.

2. The trial court's jury instruction on fair market value, although somewhat imperfect, was not erroneous.

Affirmed.

1. LARCENY — VALUE OF STOLEN ITEM — ELEMENTS OF AN OFFENSE.

The value of a stolen item, when used to differentiate between a felony and a misdemeanor offense, is an essential element of larceny; value is the price that the item will bring on an open market between a willing seller and a willing buyer; where no legal market exists for the stolen item, its value may be determined as its price on the illegal market.

2. CRIMINAL LAW — JURY INSTRUCTIONS.

No error results if jury instructions given are somewhat imper-

REFERENCES

Am Jur 2d, Larceny §§ 45, 46; Trial §§ 604 *et seq.*.

See the Index to Annotations under Larceny or Theft.

fect so long as they fairly present to the jury the issues to be tried and sufficiently protect the rights of the defendant.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *James R. Reed,* Prosecuting Attorney, and *Deborah K. Canja,* Assistant Attorney General, for the people.

*Allsop, Fitzgerald & Kolka, P.C.* (by *Arthur M. Fitzgerald),* for defendant on appeal.

Before: WAHLS, P.J., and DOCTOROFF and BRENNAN, JJ.

DOCTOROFF, J. Defendant was convicted of larceny over $100, MCL 750.356; MSA 28.588, and sentenced to one year in the county jail. On appeal, defendant argues that his conviction should be set aside and the case remanded to the trial court for entry of a conviction of larceny under $100 and resentencing because the prosecutor failed to prove the value of the stolen item. We disagree and affirm.

On October 27, 1987, Frank Altizer, Jr., shot and killed a four-point albino buck. He hung the deer on a tree next to his house for aging. Defendant stole the deer, cut up its meat and distributed it to his relatives. Following defendant's confession to the police, the hide, horns, hoofs and some meat were returned to Altizer. The deer hide was spoiled and could not be saved.

The value of the stolen item, when used to differentiate between a felony and a misdemeanor offense, is an essential element of the charged crime of larceny. Thus, proof that the value of the deer was more than $100 was an essential element of the charged offense. *People v Johnson,* 133 Mich App 150, 153; 348 NW2d 716 (1984).

Altizer did not testify as to the value of the deer,

but stated that he could have received between $3 and $5 for the hide.

To prove the value of the deer, the prosecutor put John Snyder on the stand. He was qualified as an expert. Snyder operates a licensed deer ranch in Huron County. He is licensed to allow hunters to kill wild deer on his property in return for a price which is determined by the deer's antlers. Snyder testified that in 1987 he could legally sell a four-point buck, dead or alive, to a willing buyer for $300. Absent the antlers, the deer would be worth $225. Snyder also testified that there would be no market for Altizer's killed deer because it would be illegal to sell or buy it.

Defendant moved to exclude Snyder's testimony on the basis that there was no legal market for Altizer's deer. The trial court denied the motion. Defendant claims that it was error to allow admission of Snyder's testimony because the value of stolen goods cannot be determined to exceed $100 when the particular goods cannot be sold legally and, thus, have no fair market value. This is a question of first impression for this Court.

MCL 314.27; MSA 13.1375 states:

> Deer, elk, or bear killed under the provisions of this act may not be bought or sold. The heads and skins of deer, elk and bear, lawfully taken, green or mounted, may be transported or sold either within or without the state.

Under the statute, the stolen deer, other than the head and hide, could not have been sold legally. According to Altizer, the hide could be sold legally for between $3 and $5.

Generally, the owner of personal property is qualified to testify regarding the value of such property where the testimony does not relate to

sentimental, personal or subjective value to the owner. Testimony of the objective worth of an item is not excluded simply because the item legally has worth only to its owner. *People v Dyer,* 157 Mich App 606, 609; 403 NW2d 84 (1986). Here, Altizer offered no testimony as to the objective value of the deer, other than the value of the hide.

Case law supports the use of fair market value as the relevant standard when such value exists. Value has been interpreted to mean the price that the item will bring on *an open market* between a willing buyer and seller. *Dyer,* p 609.

It is clear there is no legal market for killed deer. However, it is obvious that the deer in this case had some value other than $5 for the hide. Thus, we must decide whether a determination of value on an "open market" refers only to the value in a legal market. We conclude that "open market" may refer to an illegal market where no legal market for the item exists.

The stolen deer can be analogized to a controlled substance. Although there is no legal market for the nonlicensed sale of a controlled substance, there is an illegal market where willing sellers and buyers agree on the "street value." Testimony on the street value of controlled substances is admissible in a criminal case. *People v Gould,* 61 Mich App 614, 624; 233 NW2d 109 (1975); *People v Ward,* 133 Mich App 344, 356; 351 NW2d 208 (1984).

Here, the expert did not provide testimony as to the street value of a stolen deer. His figures were offered as an approximation of the street value of an illegally purchased or sold deer based upon what he would legally receive for a similar deer, dead or alive. This testimony could permit the jury to arrive at a reasonably based value of the deer when stolen of over $100. Additionally, we note

that the trial court took judicial notice and informed the jury of MCL 317.76; MSA 13.1276, which provides that the price of deer which are the property of the state shall be $250 when the deer are purchased from the state. This legal price could also be used to formulate the approximate street value of an illegally purchased or sold deer. We conclude that the trial court did not err in admitting the expert's testimony. It was sufficient to establish the value of the stolen deer at over $100.

Defendant next claims the trial court erred in modifying CJI 22:1:01. We disagree. The court stated:

> Fair market value is the price expressed in terms of money for which the property would have sold in the open market, if it were not illegal to sell that property at that time, and in that place, if the owner wanted to sell, but was under no pressure to do so, if the buyer wanted to buy, but was under no pressure to do so. If the seller had a reasonable time to find a buyer, and if the buyer knew the value, purpose and use of the property.

Even though jury instructions are somewhat imperfect, there is no error if they fairly present to the jury the issues to be tried and sufficiently protect the rights of the defendant. *People v Harvey,* 167 Mich App 734, 749; 423 NW2d 335 (1988). Our review of the instructions as a whole convinces us that no error took place. *People v Barnett,* 163 Mich App 331, 337; 414 NW2d 378 (1987).

Affirmed.